Filed 11/10/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DAN W. BAER, | G063642 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 30-2014-00746312) |
| DAVID H. TEDDER, | |
| Defendant and Respondent; | O P I N I O N |
| ROBERT K. KENT, | |
| Respondent. | |
| DAN W. BAER | |
| Plaintiff and Respondent, | G063784 |
| v. | (Super. Ct. No. 30-2014-00746312) |
| DAVID H. TEDDER, | |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Lon F. Hurwitz, Judge. Affirmed as modified and remanded with directions.

Newmeyer & Dillion, Michelle D. Brunson and Benjamin P. Pugh for Plaintiff and Appellant in G063642 and Plaintiff and Respondent in G063784, Dan W. Baer.

Law Offices of Robert K. Kent and Robert K. Kent for Defendant and Respondent in G063642 and Defendant and Appellant in G063784, David H. Tedder.

Robert K. Kent, in pro. per., for Respondent Robert K. Kent.

\*　　　\*　　　\*

## INTRODUCTION

Code of Civil Procedure sections 2023.030, subdivision (a) (section 2023.030(a)) and 2031.320, subdivision (b) (section 2031.320(b))[1] authorize the imposition of monetary sanctions, which include attorney's fees, against a litigant who has misused the discovery process or unsuccessfully made or opposed a motion to compel compliance with an inspection demand. This appeal presents the issue whether sections 2023.030(a) and 2031.320(b) authorize an award of appellate attorney's fees that were incurred in connection with successfully defending an appeal from an order imposing monetary sanctions. We hold that sections 2023.030(a) and 2031.320(b) in this situation serve as fee shifting statutes and authorize a trial court to award a successful respondent attorney's fees incurred on appeal.

In this case, the trial court imposed $10,475 in monetary sanctions against David H. Tedder and his counsel, Robert K. Kent, pursuant to sections 2023.030(a) and 2031.320(b) for misuse of the discovery process and unsuccessfully opposing a motion by Dan W. Baer to compel further

---

[1] Further code references are to the Code of Civil Procedure unless otherwise cited.

2

responses to a request for inspection. Both Tedder and Kent appealed the order. In a prior opinion, *Baer v. Tedder* (July 25, 2022, G059832) [nonpub. opn.], we affirmed the order imposing monetary sanctions. Baer, the prevailing party in that appeal, brought a motion in the trial court to recover attorney's fees incurred in connection with Tedder and Kent's appeal. The trial court concluded sections 2023.030(a) and 2031.320(b) authorized it to award appellate attorney's fees, granted Baer's motion, and awarded Baer $113,532.50 in fees. The court imposed those fees against Tedder only.

Both Tedder and Baer appealed. Tedder, in his appeal, contends there was no statutory basis for an award of appellate attorney's fees and the amount awarded was unreasonably high. Baer, in his appeal, contends the trial court erred by not imposing attorney's fees against both Tedder and Kent, jointly and severally.

The trial court correctly concluded that sections 2023.030(a) and 2031.320(b) authorized an award of appellate attorney's fees to Baer. The amount of fees awarded, with one reduction, was reasonable.

The trial court erred, however, by not imposing the fees against both Tedder and Kent. When sanctions are imposed jointly and severally against a litigant and counsel, each has an independent ability to appeal: It is unnecessary for the attorney to join the appeal in order to afford the client appellate relief. Kent therefore was not required to appeal the sanctions order and did so voluntarily. As such, he should be held responsible along with Tedder for the additional attorney's fees that Baer was forced to incur to uphold the sanctions order and obtain full compensation for Tedder and Kent's misuse of the discovery process.

Accordingly, we modify the attorney's fees award by reducing it from $113,532.50 to $101,805, a reduction of $11,727.50, and by making

3

Tedder and Kent jointly and severally liable for the full amount of the fees. As modified, we affirm the order awarding Baer attorney's fees on appeal.

## FACTS AND PROCEDURAL HISTORY

These consolidated appeals arose out of a lawsuit by Baer against Tedder for malicious prosecution. That lawsuit is but one piece of complicated litigation that has spanned nearly 30 years and generated at least eight appellate opinions. A summary of this litigation is provided in our prior opinion, *Baer v. Tedder, supra*, G059832.

In October 2020, Baer filed a motion to compel production of documents and a request for sanctions against Tedder and Kent.[2] (*Baer v. Tedder, supra*, G059832.) In December 2020, the trial court granted Baer's motion to compel and awarded $10,475 in sanctions against Tedder and Kent. (*Ibid.*) With respect to the sanctions, the trial court stated it had "carefully reviewed the extensive correspondence submitted by both parties" and determined $10,475 in sanctions was authorized under sections 2023.010 and 2031.230. The court found, "Tedder [and Kent] engaged in a misuse of the discovery process by refusing to submit to an authorized discovery method and/or [by] making evasive responses to discovery . . . ." The court also found "[t]here was no substantial justification for defendant Tedder's [and Kent's] opposition to this motion. Indeed there was no justification at all."

We affirmed the sanctions award in *Baer v. Tedder, supra*, G059832. We declined to address several arguments made by Tedder and

---

[2] The prior opinion referred to Tedder and Kent together simply as Tedder. (*Baer v. Tedder, supra*, G059832.) In this, opinion, we refer to each by his own surname.

4

Kent that were unrelated to the monetary sanctions and therefore not cognizable in the appeal. (*Ibid.*) We rejected Tedder and Kent's other arguments and found to be frivolous Tedder and Kent's contention that Baer had "'concealed'" facts from the trial court, "'deceived'" the court, and "made 'false' and 'misleading' statements." (*Ibid.*)

We firmly rejected the argument that Tedder and Kent had done no wrong and acted with substantial justification: "As stated earlier in this opinion, we agree with the trial court's determination Tedder's actions were not substantially justified. Moreover, this was not the first time the court had to reprimand Tedder and order him to cooperate during discovery. Tedder's history of evasive tactics and non-responsiveness hindered Baer's ability to prepare for depositions and respond to pending summary judgment motions. The court's sanction order was properly designed to prevent Tedder from benefitting from his discovery violations." (*Baer v. Tedder, supra*, G059832.) Although we declined to impose sanctions on appeal, we concluded that "some of the arguments raised could be construed as frivolous, and often lacked supporting record references." (*Ibid.*)

In November 2022, after issuance of the remittitur in *Baer v. Tedder, supra*, G059832, Baer filed a motion to recover his attorney's fees incurred on appeal. Baer requested $113,532.50 in attorney's fees against both Tedder and Kent either as recoverable costs under section 1033.5 or as additional monetary sanctions pursuant to sections 2023.010, 2023.030(a), and 2031.230(b). Although Tedder and Kent presented 17 points in opposition to the motion, their primary argument was the discovery statutes authorize an award of monetary sanctions, not attorney's fees, and Baer did not request monetary sanctions.

5

The trial court heard oral argument on Baer's motion on September 28, 2023. On the same day, a minute order was entered granting the motion as to Baer's entitlement to appellate attorney's fees. The court concluded sections 2023.010, 2023.030, and 2031.320 authorized an award of appellate attorney's fees as monetary sanctions. The court withheld making a determination of the amount of attorney's fees and required Baer's counsel to submit additional, more detailed information supporting the fee claim.

In response to the order, Baer submitted additional declarations and exhibits to substantiate the amount of fees being sought. Baer claimed the lodestar amount had increased to $180,213.30 for time incurred in preparing the additional declarations. Tedder filed an expert report for his expert, Lawrence R. Jacobson, a supplemental memorandum of points and authorities, and a supplemental declaration from Kent. Tedder argued the amount of fees Baer sought was unreasonable, grossly inflated, and reflected "substantial inefficiency."[3]

A second hearing was conducted on December 5, 2023. By minute order entered that day, the trial court granted Baer's motion and awarded attorney's fees in the original lodestar amount of $113,532.50. The court found: "Here, Baer's counsel has submitted sufficient information regarding the amount of attorneys' fees requested, including detailed billing statements

---

[3] Tedder suggests the trial court erred by considering the supplemental declarations and exhibits submitted by Baer because "the reply brief and supplemental brief are not the time to correct deficiencies in the moving papers." The trial court acted within its discretion to order and consider supplemental evidence from Baer because Tedder was given the opportunity to respond. (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 449; *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 241.)

6

and additional information about the discounted rate charged to Baer versus the standard billing rates. The requested rates are within the range of reasonable rates charged in the Los Angeles/Orange County area for this type of work. A review of the supplemental papers does not show any appreciable amount of insufficiency or duplicate work performed by Baer's counsel." The court denied Baer fees for preparing the additional declarations and found the original lodestar amount to be "appropriate."

The trial court imposed the award of attorney's fees against Tedder only. The court did so based on its belief that, because the first sanctions order was made jointly and severally against Tedder and Kent, Kent had no choice but to join in Tedder's appeal.

## DISCUSSION

## I.

### Sections 2023.030(a) and 2031.320(b) Authorize Recovery of Attorney's Fees Incurred on Appeal

Tedder argues there was no statutory or other legal authority for the trial court to have awarded Baer his costs incurred in the appeal of the sanctions order. Baer argues and the trial court concluded that sections 2023.010, 2023.030, and 2031.320 provided such authorization. We conclude sections 2023.030(a) and 2031.320(b) provided authorization for Baer to recover his attorney's fees incurred in the appeal of the sanctions order.

The issue of a party's entitlement to attorney's fees is a legal issue subject to de novo review. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175; *Garcia v. Santana* (2009) 174 Cal.App.4th 464, 468.) "The normal rules of appellate review apply to an order granting or denying attorney fees; i.e., the order is presumed correct, all intendments and

7

presumptions are indulged to support the order, conflicts in the evidence are resolved in favor of the prevailing party, and the trial court's resolution of factual disputes is conclusive." (*Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1017.)

As a general rule, the party prevailing on appeal is entitled to recover costs on appeal, except as provided by California Rules of Court, rule 8.278 or statute. (Cal. Rules of Court, rule 8.278(a).)[4] Baer was the prevailing party on appeal because he was the respondent and the Court of Appeal affirmed the sanctions order. (Rule 8.278(a)(2).) The remittitur included a judgment awarding costs to Baer. (Rule 8.278(b)(1).)

Items recoverable as costs on appeal are prescribed by rule 8.278(d)(1). No other costs may be recovered. (*Stratton v. Beck* (2018) 30 Cal.App.5th 901, 910.) Costs recoverable under rule 8.278 include filing fees, brief printing, and the cost to produce additional evidence on appeal. (Rule 8.278(d)(1)(A), (C), (E).) They do not include attorney's fees. (*Stratton,* p. 910.)

But that does not mean appellate attorney's fees cannot be recovered. Rule 8.278(d)(2) states: "Unless the court orders otherwise, an award of costs neither includes attorney's fees on appeal nor precludes a party from seeking them under rule 3.1702." As in the trial court, attorney's fees on appeal are recoverable if authorized by contract, statute, or law. (§ 1033.5, subd. (a)(10).) A statute authorizing an award of attorney's fees in the trial court ordinarily authorizes an award of fees incurred on appeal unless the statute specifically provides otherwise. (*Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 927–928; *City of Rocklin v. Legacy Family*

---

[4] Further rule references are to the California Rules of Court unless otherwise cited.

8

*Adventures-Rocklin, LLC* (2022) 86 Cal.App.5th 713, 737; *Roe v. Halbig* (2018) 29 Cal.App.5th 286, 313; *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499; see *Serrano v. Unruh* (1982) 32 Cal.3d 621, 637 ["[I]t is established that fees, if recoverable at all—pursuant either to statute or parties' agreement—are available for services at trial and on appeal"].)

Section 2023.030(a) states, in relevant part: "The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, *including attorney's fees*, incurred by anyone as a result of that conduct." (Italics added.)[5] Section 2031.320(b) states: "the court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel compliance with a demand, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2031.320(b).)[6]

Sections 2023.030(a) and 2031.320(b) authorize recovery of attorney's fees and do not specifically preclude recovery of attorney's fees on

---

[5] Section 2023.010 lists the types of conduct constituting a misuse of the discovery process. Relevant here are: "[f]ailing to respond or to submit to an authorized method of discovery" (*id.*, subd. (d)); "[m]aking an evasive response to discovery" (*id.*, subd. (f)); and "[m]aking or opposing, unsuccessfully and without substantial justification, a motion to compel or to limit discovery" (*id.*, subd. (h)).

[6] Section 2031.320(b), unlike section 2023.030(a), does not expressly state that monetary sanctions include attorney's fees. Section 2031.320(b) does, however, authorize the court to impose a monetary sanction "under Chapter 7 (commencing with Section 2023.010)," and section 2023.030(a) provides that a monetary sanction includes attorney's fees.

appeal. (See *Evans v. Unkow, supra*, 38 Cal.App.4th at p. 1499.) Sections 2023.030(a) and 2031.320(b) therefore authorized Baer's recovery of attorney's fees expended in connection with the appeal of the sanctions order.

Tedder argues sections 2023.030(a) and 2031.320(b) authorize imposition of discovery sanctions only, which he contends are not attorney's fees, and therefore do not authorize recovery of appellate attorney's fees incurred by Baer. Although sections 2023.030(a) and 2031.320(b) refer to imposition of a "monetary sanction," discovery sanctions are not "sanctions" in the sense of punishment: "[B]ecause the very purpose of discovery is to promote the efficient and effective conduct of trial, discovery sanctions are not to be used 'to provide a weapon for punishment. . . .'" (*City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 53.) "[D]iscovery sanctions are not designed to punish." (*Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 74; see *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992 ["The trial court cannot impose sanctions for misuse of the discovery process as a punishment"].)

The purpose and effect of sections 2023.030(a) and 2031.320(b) is not to punish but to compensate a litigant for costs that litigant incurred as the result of another litigant's misuse of the discovery process. "Monetary sanctions are intended to compensate a litigant for expenses incurred as a result of another litigant's misuse of the discovery process." (*Deck v. Developers Investment Co., Inc.* (2023) 89 Cal.App.5th 808, 833.) For that reason, sections 2023.030(a) and 2031.320(b) are best described as cost shifting statutes: They compensate a litigant for another litigant's misuse of the discovery process by requiring the trial court to shift expenses incurred, which include attorney's fees, onto the offending party. While such cost shifting is labeled a "sanction," it is no more a "sanction" in this respect than,

10

for example, shifting to the losing plaintiff on an anti-SLAPP[7] motion the attorney's fees and costs incurred by a prevailing defendant (§ 425.16, subd. (c)(1)) or shifting to a subpoenaing party the attorney's fees and costs incurred by the subpoenaed party in quashing the subpoena (§ 1987.2, subd. (c)). In both of those examples, the statutory authorization for an award of attorney's fees has been held to include appellate fees. (*Roe v. Halbig, supra*, 29 Cal.App.5th at p. 313 [fees under § 1987.2, subd. (c)]; *Evans v. Unkow, supra*, 38 Cal.App.4th at p. 1499 [fees under § 425.16, subd. (c)(1)].)

Awarding appellate attorney's fees under sections 2023.030(a) and 2031.320(b) is necessary to ensure their remedial and compensatory purposes are satisfied. An appeal of an award of monetary sanctions forces the litigant awarded those sanctions to incur yet more attorney's fees to preserve an award intended as compensation for expenses incurred as a result of the sanctioned litigant's misuse of the discovery process. An award of appellate attorney's fees therefore would be necessary to provide full compensation to the litigant awarded sanctions. If sections 2023.030(a) and 2031.320(b) did not authorize recovery of appellate attorney's fees, a sanctioned party could defeat the purpose of the sanctions by forcing the party awarded sanctions to incur the cost of an appeal.

Tedder and Kent, by bringing the appeal, forced Baer to incur additional attorney's fees to uphold the sanctions award. Accordingly, for Baer to receive full compensation for his expenses incurred as a result of Tedder's misuse of the discovery process, it would be necessary to award Baer his attorney's fees incurred in Tedder and Kent's appeal.

---

[7] "'SLAPP' is an acronym for 'strategic lawsuit against public participation.'" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1.)

Sanctions are not to be imposed if the court finds the party subject to the sanctions acted with substantial justification in misusing the discovery process. (§§ 2023.030(a), 2031.320(b).) For purposes of awarding attorney's fees on appeal, substantial justification refers to the conduct leading to the initial imposition of sanctions, not substantial justification in bringing the appeal. Appellate attorney's fees are recoverable under sections 2023.030(a) and 2031.320(b), not because pursuing an appeal constitutes a misuse of the discovery process, but because an award of appellate fees is necessary to fully compensate the party receiving the sanctions for its expenses incurred as a result of the sanctioned party's misuse of the discovery process. A trial court, having initially declined to find the sanctioned party acted with substantial justification, need not and should not consider substantial justification in awarding appellate attorney's fees.

In our prior opinion, we stated we "agree[d] with the trial court's determination Tedder's actions were not substantially justified" and that "Tedder's history of evasive tactics and non-responsiveness hindered Baer's ability to prepare for depositions and respond to pending summary judgment motions." (*Baer v. Tedder, supra*, G059832.) We concluded, "[t]he [trial] court determined there were multiple findings of misconduct, all of which were supported by the record" and "the [trial] court did not abuse its discretion in determining there was no substantial justification factually or legally for Tedder's ongoing refusal to cooperate at each stage of the [electronically stored information] forensic search." (*Ibid.*)

Tedder argues that in the prior appeal Baer "specifically requested" attorney's fees or monetary sanctions and we, in our prior opinion, "rejected" Baer's request. Tedder mischaracterizes our prior opinion. Baer argued the prior appeal was frivolous and requested that we include in the

12

disposition of the opinion a finding that the appeal lacked substantial justification so that Baer could file a motion for sanctions after issuance of the remittitur. Baer did not bring a separate motion for sanctions but left it to us to decide whether to order Tedder and Kent to show cause why their appeal was not frivolous. We concluded that although some of Tedder's arguments were frivolous, the appeal was not totally and completely without merit, and therefore we declined to issue sanctions against Tedder for bringing a frivolous appeal. (*Baer v. Tedder, supra*, G059832.) The remittitur awarded costs to Baer, and those costs would include attorney's fees under sections 2023.030(a) and 2031.320(b). Nothing in those code section requires an appeal to have been frivolous in order for the party prevailing in that appeal to recover attorney's fees.

Tedder argues that awarding attorney's fees to the prevailing party on appeal "discourages a party from appealing an unfavorable judgment or order, and thus significantly chills every litigant's enjoyment of the fundamental protection of the right to appeal." Tedder's argument is clearly wrong. Under Tedder's argument, no prevailing party would ever be able to recover attorney's fees incurred in an appeal. Yet California Supreme Court authority holds that a statute authorizing an award of attorney's fees in the trial court authorizes an award of fees incurred on appeal. (*Morcos v. Board of Retirement, supra*, 51 Cal.3d at pp. 927–928; *Serrano v. Unruh, supra*, 32 Cal.3d at p. 637.)

Tedder also argues that Baer raised new arguments and factual matters in his reply memorandum of points and authorities in support of his attorney's fees motion. Tedder does not identify what new arguments and facts were presented by Baer and supplies no record citations in support of this argument. Rule 8.204(a)(1)(C) requires every appellate brief to "[s]upport

13

any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." We may disregard factual assertions that do not comply with this rule and "conclude that parties forfeit arguments by failing to support statements in the argument section of a brief with record citations." (*Wentworth v. Regents of University of California* (2024) 105 Cal.App.5th 580, 596 (*Wentworth*); see *Rybolt v. Riley* (2018) 20 Cal.App.5th 864, 868; *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 195.) We deem the argument to be forfeited.

## II.

## The Amount of Attorney's Fees Awarded Baer, with One Reduction, Was Reasonable

A. *Background and Standard of Review*

Tedder challenges the amount of attorney's fees awarded Baer. Although this challenge is parsed into 17 separate arguments with separate headings, the arguments fall into four categories: (1) the number of hours allowed by the trial court, (2) the billing rates approved and used by the trial court, (3) billing documentation submitted by Baer, and (4) the amount of fees overall.

We start with some legal background on calculating the amount of an award of attorney's fees. Lodestar is the presumptive method for calculating the amount of an attorney's fees award. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.) "[T]he lodestar is the basic fee for comparable legal services in the community." (*Ibid.*) Lodestar has two components: (1) the number of hours reasonably expended and (2) the reasonable hourly rate of the legal professional. Lodestar is "the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM*) [listing lodestar factors].) The lodestar

14

figure may then be adjusted, based on a consideration of various factors, "to fix the fee at the fair market value for the legal services provided." (*Ibid.*)

The trial court awarded Baer $113,532.50 in attorney's fees, which was the original amount Baer requested in his moving papers. That amount was calculated by using a lodestar of 148.3 hours times billing rates ranging from $550 to $975 per hour.

The trial court's determination of the amount of attorney's fees to award is reviewed under the abuse of discretion standard. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751; *Perry v. Stuart* (2025) 111 Cal.App.5th 472, 512; *Gutierrez v. Chopard USA Ltd.* (2022) 82 Cal.App.5th 383, 392–393.) "In applying the abuse of discretion standard, the reviewing court measures the evidence presented to the trial court against the range of options permitted by the established legal criteria. [Citation.] The scope of the trial court's discretion is limited by the governing law, and an action that ""transgresses the confines of the applicable principles of law"" constitutes an abuse of discretion. [Citation.]" (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789 (*Cornerstone*).)

"The trial court's factual findings are reviewed under the substantial evidence standard while the trial court's legal conclusions are reviewed de novo. [Citation.] It is up to the trial court to weigh the evidence, resolve conflicts in it, and assess the credibility of witnesses. [Citation.] The reviewing court resolves any evidentiary conflicts most favorably to the trial court's ruling [citation], and, if more than one reasonable inference can be deduced from the facts, the reviewing court must accept the inference supporting the trial court's decision [citation]." (*Cornerstone, supra*, 56 Cal.App.5th at p. 789.)

15

B. *Number of Hours*

1. Hours Spent on the Prior Appeal

The time spent and tasks performed by Baer's attorneys related to the prior appeal are as follows:

| | |
|---|---|
| Review and analysis of opening brief | 3.2 |
| Communications re: extensions and reinstatement of appeal | 3.2 |
| Legal research re: issues raised in opening brief | 11.6 |
| Creating a chronological outline of the relevant facts on appeal | 12.9 |
| Drafting respondent's brief | 70.4 |
| Preparing respondent's appendix | 4.1 |
| Reviewing and analyzing reply brief | 1.9 |
| Preparing for and attending oral argument | 8.2 |
| Reviewing opinion | 1.4 |
| **TOTAL** | **116.9 hours**[8] |

Tedder claims that over 100 hours were spent "to write" Baer's respondent's brief and that amount of time was unreasonable considering the respondent's brief only had 20 pages "of newly written material" and

---

[8] Baer claimed his attorneys spent 117.1 hours on the prior appeal, and the trial court awarded attorney's fees based on that number of hours. However, the amounts of time spent on individual tasks, which are set forth in our chart and in a declaration from Baer's trial counsel, add up to 116.9, not 117.1 hours. Tedder did not bring this discrepancy to our attention, so a reduction of attorney's fees is not in order.

addressed a "less than demanding argument." Tedder argues it should have taken no more than one hour per page to write Baer's respondent's brief.

The trial court did not find the amount of time spent preparing Baer's respondent's brief was unreasonable or excessive, and neither do we. We have again reviewed the appellate briefs from the prior appeal and find the amount of time Baer's counsel spent conducting legal research, creating a chronological outline of facts, and drafting the respondent's brief (the tasks which Tedder lumps together as "writing" the brief) was not unreasonable under the circumstances.

Baer's respondent's brief was over 40 pages in length (excluding tables, certificate of word count, and proof of service), not 20, and the length of and time spent preparing the brief were necessitated in large part by Tedder's appellate strategy. Tedder's opening brief in the prior appeal was 68 pages in length (excluding tables, certificate of word count, and proof of service) and consisted of 13,911 words—just 89 words shy of the limit. (See rule 8.204(c)(1).) In his brief, Tedder challenged the award of sanctions on numerous grounds, including substantial justification for Tedder's misuse of the discovery process, which required Baer to address at length Tedder and Kent's conduct leading to the award of sanctions. Because Tedder's brief challenged the order granting Baer's motion to compel, which was a nonappealable order, Baer's respondent's brief included a section arguing the order granting Baer's motion to compel was not appealable.

We noted in our prior opinion that in several instances Tedder had not provided authority in support of an assertion and had "cherry-picked favorable facts relating to each argument in the briefing" rather than provide a factual summary as required by the rules of court. (*Baer v. Tedder, supra*, G059832.) In response to the omissions in Tedder's opening brief, Baer's

17

respondent's brief included a "Counter-statement of the Case", which included the complete factual summary absent from Tedder's opening brief, and addressed the facts underlying the merits of Baer's motion to compel.

Baer's respondent's brief was not, as Tedder contends, substantially a repetition of trial court documents. Appellate briefs will likely cover facts and arguments presented to the trial court; however, such facts and arguments must be tailored to and presented in a manner and style suitable for an appeal. That would include respecting the standard of review and including citations from the appellate record. Baer's respondent's brief did just that. Baer's counsel, unlike Tedder's, complied with the rules of court by engaging in the time-consuming task of providing record citations to support every factual statement and legal authority to support every argument.

The issues presented by the prior appeal, though not unusually difficult or complicated, were nonetheless demanding, and were made all the more demanding by Tedder and Kent's kitchen-sink appellate strategy. As the trial court commented: "[T]he appellate opinion in this case is 32 pages long. I have rarely seen appellate opinions take 32 pages when there are simple matters involved."

Tedder argues the amount of Baer's attorney's fees "reflect substantial incompetency, inefficiency[,] and duplicated and redundant services, if not a fraudulent padding of time." The trial court reviewed the billing statements submitted by Baer and found they "d[o] not show any appreciable amount of insufficiency or duplicate work performed by Baer's counsel." We too have reviewed the billing statements and agree with the trial court's assessment. We decline to entertain Tedder's unsupported accusation of fraud; such an accusation does not belong in an appellate brief.

18

Tedder argues Baer did not submit an expert declaration to justify the amount of time needed to defend Tedder's appeal. Tedder cites no legal authority in support of the proposition that Baer was required to do so. To the contrary, under California law an expert declaration is not required to support an amount of attorney's fees: "'The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony.'" (*PLCM, supra*, 22 Cal.4th at p. 1096.)

In sum, the amount of time spent by Baer's counsel in connection with the prior appeal was not unreasonable.

2. Hours Spent on the Motion for Attorney's Fees

A prevailing party may recover attorney's fees incurred in litigating an entitlement to a fee award. (*Cash v. County of Los Angeles* (2025) 111 Cal.App.5th 741, 750, review granted Aug. 20, 2025, S291827.) Baer claimed, and the trial court allowed him, fees for 31.9 hours of work expended in connection with the attorney's fees motion. The work included a notice of motion, a 10-page memorandum of points and authorities, a four-page declaration, and a request for judicial notice. Time spent responding to Tedder and Kent's opposition to the motion was not included in the 31.9 hours.

31.9 hours, which is over 27 percent of the total number of hours (116.9) spent on the appeal alone, seems excessive for preparing a notice of motion, a memorandum of points and authorities, a short declaration and a request for judicial notice. In response to Tedder and Kent's opposition, Baer's counsel prepared a 10-page reply memorandum of points and authorities, evidentiary objections to three declarations submitted by Tedder and Kent, a supplemental request for judicial notice, and a supplemental declaration. Although 31.9 hours would seem reasonable for all of the work

19

performed in connection with the attorney's fees motion, the trial court limited Baer's recovery to the lodestar presented in Baer's motion papers, which was based on work performed in connection with the initial motion papers only. Baer does not argue the trial court erred in doing so.

We believe the number of hours in connection with the attorney's fees motion should be reduced by 6.9 hours to 25 hours. This results in a reduction in fees of $6,727.50.[9]

C. *Billing Rates*

The trial court accepted as reasonable hourly billing rates the rates claimed by Baer's attorneys. Those rates ranged from $550 to $975 per hour. Tedder argues those rates were unreasonable and excessive.

We note at the outset that the hourly rates used to calculate the amount of attorney's fees claimed by Baer were not the same as the rates used to calculate the fees charged to him. David A. Robinson, an attorney at Holland & Knight, explained in a declaration submitted to the trial court that Baer had been a longtime client while Robinson was a partner at the law firm Enterprise Counsel Group. After Robinson moved to Holland & Knight in February 2021, he arranged for all of his clients, including Baer, to receive a significant discount off of Holland & Knight's standard hourly rates for a two-year period. For example, from February 1, 2021, through September 29, 2021, when Baer's respondent's brief was filed, Holland & Knight discounted its hourly billing rate for Baer in amounts ranging from 43.5 percent to 54.7 percent. Holland & Knight billed Baer using the discounted hourly rate for

---

[9] 31.9 hours - 25 hours = 6.9 hours. The time was billed at $975 per hour. 6.9 hours x $975/hour = $6,727.50.

work on the prior appeal. Holland & Knight's standard hourly rates were used to calculate the amount of attorney's fees sought by Baer's motion.

Benjamin P. Pugh, an attorney at Newmeyer & Dillion explained in a declaration submitted to the trial court that Baer receives a negotiated discounted hourly rate and is billed at $595 per hour. Pugh's ordinary billing rate at Newmeyer & Dillion is $790 per hour. When Pugh left Holland & Knight in May 2023, his standard billing rate was $1,000 per hour.

As a consequence, the amount of fees billed to Baer was substantially lower than the amount sought by the attorney's fees motion and awarded by the trial court. The amount which Baer agreed to pay does not, however, necessarily place a cap on the amount of an attorney's fees award. "'The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. [Citations.] This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel.'" (*Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1260.) "It is well established that an attorney who accepts a reduced rate from a client is not precluded from seeking a reasonable hourly rate pursuant to the lodestar method." (*Pasternak v. McCullough* (2021) 65 Cal.App.5th 1050, 1055 (*Pasternak*).) "[A] trial court has discretion to award an hourly rate under the lodestar method that exceeds the rate that was actually incurred or paid." (*Id.* at p. 1058; see *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 701 (*Syers*) ["[t]here is no requirement that the reasonable market rate mirror the *actual* rate billed"].)

The relevant issue therefore is whether the hourly billing rates used to calculate the amount of fees awarded by the trial court were reasonable. "The reasonable hourly rate is that prevailing in the community

for similar work." (*PLCM, supra*, 22 Cal.4th at p. 1095.) "'"The reasonable market value of the attorney's services is the measure of a reasonable hourly rate."'" (*Pasternak, supra*, 65 Cal.App.5th at p. 1055.) The hourly rate set by the trial court must be "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 783.)

The trial court found "[t]he requested rates are within the range of reasonable rates charged in the Los Angeles-Orange County area for this type of work." Tedder contends this finding is not supported by substantial evidence; in particular, he contends 2021 and 2022 editions of the Real Rate Report used by Baer to justify his attorneys' hourly billing rates were inadmissible, and if admissible, should have been disregarded.

The Real Rate Report, which is published by Wolters Kluwer, "identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than eighty companies." (*Vasquez v. Packaging Corp. of America* (C.D. Cal., Aug. 17, 2020, No. CV 19-1935 PSG (PLAx)) 2020 U.S. Dist. Lexis 224590, p. *26.) "Courts have found that the Real Rate Report is 'a much better reflection of true market rates than self-reported rates in all practice areas.'" (*Id.* at pp. *26–*27; see *Tallman v. CPS Sec. (USA), Inc.* (D. Nev. 2014) 23 F.Supp.3d 1249, 1258 [considering the Real Rate Report]; *G.B. ex rel. N.B. v. Tuxedo Union Free School Dist.* (S.D.N.Y. 2012) 894 F.Supp.2d 415, 432, fn. 15 [same].)

Baer submitted excerpts from the Real Rate Report for the years 2021 and 2022 in support of his attorney's fees request. The excerpts included data only for the practice area labeled "Commercial." For 2021, the excerpts

22

from the Real Rate Report showed the following hourly billing rates for the Los Angeles legal market:

| Role | First Quartile | Median | Third Quartile |
|---|---|---|---|
| Partner | $665 | $901 | $1,079 |
| Associate | $564 | $753 | $895 |

For 2022, the excerpts from the Real Rate Report showed the following hourly billing rates for the Los Angeles legal market:

| Role | First Quartile | Median | Third Quartile |
|---|---|---|---|
| Partner | $693 | $849 | $1,071 |
| Associate | $464 | $686 | $876 |

There are two obvious flaws in relying on these excerpts from the Real Rate Report. First, the rates are for the commercial law practice area, not for litigation or appellate litigation. Second, rates are for the Los Angeles legal market. Pugh declared that the Los Angeles legal market "is generally understood to be part of the Los Angeles metro area for statistical purposes" but he offered no evidence for that proposition generally or for the Real Rate Report in particular. Baer did not submit any evidence to show the Los Angeles legal market included Orange County, "'the community where the court is located.'" (*Syers, supra*, 226 Cal.App.4th at p. 700.)

Declarations from attorneys may be sufficient to establish a reasonable hourly rate. (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1324.) In addition to the Real Rate Report excerpts, Baer provided information about rates through declarations from his attorneys. Robinson declared: "[Holland & Knight]'s hourly rates are set based on a

23

comprehensive evaluation of the national and local legal markets, the rates charged by comparable firms, and the experience and skill of each individual billing professional." After setting forth the hourly billing rates for the Holland & Knight attorney who had worked on the prior appeal, Robinson declared: "Based upon my more than 40 years of experience practicing law in Southern California and familiarity with the fees and hourly rates common in the legal community, I believe [Holland & Knight]'s standard billing rates are reasonable, consistent with the average billing rates for similarly situated Orange County litigation practices and, on the whole, quite competitive given our results and the market demand for our services."

Pugh declared: "Based upon my 24 years of experience practicing law in Southern California and familiarity with the fees and hourly rates common in the legal community, I believe my standard billing rate is reasonable and is equal to or below the average billing rates for similarly situated Orange County litigation practices."

The Robinson and Pugh declarations are sufficient to support the trial court's finding that the hourly rates charged by Baer's attorney were reasonable. Baer did not have to submit an expert declaration to justify his attorneys' hourly billing rates. (*PLCM, supra*, 22 Cal.4th at p. 1096.) The trial judge was also entitled to rely on his own knowledge and familiarity with the legal market to determine the reasonable hourly rate to be used to

calculate the lodestar. (*Nishiki v. Danko Meredith, P.C.* (2018) 25 Cal.App.5th 883, 898; *Syers, supra*, 226 Cal.App.4th at p. 702.)[10]

We find one exception in which the hourly rate was unreasonable. The billing rate for the attorney who prepared the motion for attorney's fees was $975 per hour, which was the highest rate for any of Baer's attorneys who worked on the prior appeal. Although the motion for attorney's fees was not, as Tedder contends, uncomplicated, it was not so difficult as to command the highest billing rate among Baer's attorneys. The appropriate billing rate, we conclude, was the rate for Dellefave, the attorney principally responsible for preparing Baer's respondent's brief. Dellefave's billing rate at the time the motion for attorney's fees was filed was $775 per hour. As a consequence of this rate reduction, the amount of fees will be reduced by $5,000.[11] The total reduction in the attorney's fees award therefore is $11,727.50 ($5,000 + $6,727.50.)

Tedder contends the trial court ignored his expert's reports and opinion on the reasonableness of Baer's attorney's fees. Tedder offers no record citations in support of that contention. We note the trial court addressed the expert's report in the December 5, 2023 minute order. The

---

[10] Tedder contends the hourly rate for Nicholas A. Dellefave, who was primarily responsible for drafting Baer's respondent's brief, was, at $775 per hour, "unreasonable and excessive in light of the fact [he] was a relatively new and inexperienced attorney with no known appellate experience." Indeed, Tedder expends considerable effort attacking Dellefave's experience, education, and qualifications. Tedder provides no record citations to support his claims about Dellefave, so we consider them to be forfeited. (*Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1172 (*Slone*).)

[11] We have reduced from 31.9 to 25 the number of hours for the attorney's fees motion. $975/hour - $775/hour = $200/hour. 25 hours x $200/hour = $5,000.

expert had attested that he had suffered whiplash as a result of an accident and therefore his review had not been "'as through [*sic*] as [he] would normally do.'" The court stated, "In light of [the expert]'s medical condition and admittedly incomplete review of the challenged billing statements, his report will be given the appropriate consideration." The trial court also addressed the opinions of Tedder's expert during the hearing on December 5, 2023, and, acting within its discretion, declined to accept them.

D. *Billing Documentation*

Tedder argues that Baer submitted nothing to the trial court to show that he paid or was expected to pay the amount sought by his attorney's fees motion. In particular, Tedder asserts that Pugh's declaration submitted with Baer's moving papers failed to state whether Baer paid or ever agreed to pay the attorney's fees related to the appeal or agreed to the billing rate increases. In a related argument, Tedder argues that Baer did not submit documents (such as retainer agreements) to show that he had agreed to "the massive increase" in the hourly billing rates of his attorneys.

Baer submitted to the trial court invoices he received from the law firms of Holland & Knight and Newmeyer & Dillion for fees incurred in the prior appeal. The invoices are appropriately redacted to remove irrelevant and privileged information and reflect the billing rates charged to Baer. The trial court was entitled to give credence to the invoices (*Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968, 987), and they establish that Baer was expected to pay for the legal services rendered. Tedder cites no authority, and we have found none, establishing Baer had to  pay the invoices in order to recover attorney's fees from Tedder.

Tedder argues the trial court erred by not making a downward adjustment for block billing used by Baer's counsel. Block billing occurs when

26

"a block of time [is assigned] to multiple tasks rather than itemizing the time spent on each task." (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1010.) "Block billing is not objectionable 'per se.'" (*Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 830.) "Trial courts retain discretion to penalize block billing when the practice prevents them from discerning which tasks are compensable and which are not." (*Heritage Pacific Financial*, at p. 1010.) Although the invoices submitted by Baer used some block billing, it is clear from the billing entries which tasks were incurred in connection with the prior appeal and the motion for attorney's fees.

E. *Amount of Fees Overall*

At several points throughout his appellate briefs, Tedder contends an appellate specialist could have been retained to prepare Baer's respondent's brief for $15,000 to $20,000 at most. Tedder provides no citation to the record or other source to support that proposition. Tedder contends too, without citation to the record, that Kent had interviewed and retained appellate specialists for his clients and there is an "abundance" of such specialists who would have charged "$400-$600 per hour in matters far more complicated than the present [a]ppeal." Tedder further contends, again without record citation, that Kent was "able to obtain maximum charges for both an opening and reply brief in the range of $25,000-$30,000." We consider those contentions to have been forfeited. (Rule 8.204(a)(1)(C); see *Slone, supra*, 106 Cal.App.5th at p. 1172; *Wentworth, supra*, 105 Cal.App.5th at p. 596.)

Tedder argues that Baer's attorney's fees were so grossly inflated that the trial court should have denied the motion for fees outright. That is particularly so, Tedder claims, because Baer submitted nothing to show he

27

was billed or had paid the fees sought by the motion. A trial court has discretion to deny altogether an unreasonably inflated fee request. (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 990; *Serrano v. Unruh, supra*, 32 Cal.3d at p. 635.) The trial court here exercised its discretion by not denying Baer's attorney's fees request, and we find no abuse of that discretion.

Tedder argues the amount of attorney's fees sought by Baer was "so 'exorbitant and wholly disproportionate' to the services rendered as to 'shock the conscience.'" Tedder claims that $113,000 in fees charged to Baer by his counsel constituted a breach of fiduciary duties and a violation of rule 1.5(a) of the Rules of Professional Conduct ("a lawyer shall not make an agreement for, charge, or collect an unconscionable or illegal fee"). The case authority cited by Tedder, *Tarver v. State Bar* (1984) 37 Cal.3d 122, 126, did not concern an award of attorney's fees. *Tarver* was a review of a recommendation of the Review Department of the State Bar Court that an attorney be disbarred from the practice of law in California for, among other things, charging an exorbitant fee.

We have concluded the number of hours expended by Baer's counsel and their hourly billing rates were, with one exception, reasonable. Our conscience is not shocked. (See *Pasternak, supra*, 65 Cal.App.5th at pp. 1058–1059 [lodestar based on reasonable number of hours and reasonable hourly billing rate does not shock the conscience].)

## III.

### Both Tedder and Kent Should be Liable, Jointly and Severally, for Attorney's Fees

Baer argues in his appeal the trial court erred by imposing appellate fees against only Tedder rather than both Tedder and Kent jointly and severally. We agree.

In opposing Baer's motion for appellate fees, Tedder and Kent did not argue that fees, if awarded, should be imposed only against one or the other. The trial court, in its September 28, 2023 minute order, granted Baer's motion for appellate fees without saying whether fees would be imposed against Tedder, Kent, or both. In its December 5, 2023 minute order, the court ruled that Baer's motion for appellate fees was granted "against Defendant David H. Tedder solely and individually." During the hearing that same day, the court explained it was imposing appellate fees against Tedder only because the sanctions order that was the subject of the appeal had been imposed jointly and severally against Tedder and Kent: "So the order itself is a joint and several order. It cannot be appealed severally. It has to be appealed jointly or there is no appeal. That is . . . a rule of appellate procedure. I can't give you the specific citation, but that is the rule. . . . [I]f it's an order that says Tedder and Tedder's counsel of record, one can't appeal without the other. They're sort of stuck with each other."

We have found no statute, case authority, rule, or legal precept requiring all parties subject to a joint or a joint and several sanctions order to join in an appeal from that order. The trial court cited none. Nor has Tedder or Kent.

Joint and several liability for the sanctions award did not mean both Tedder and Kent had to both appeal the sanctions order in order to

29

obtain appellate relief. Joint and several liability means each obligor is independently liable for the full amount of the liability (see *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 582–583) and the injured party may sue either or both (*Reynolds v. Lerman* (1956) 138 Cal.App.2d 586, 594–595; see *Richards v. Owens-Illinois, Inc.* (1997) 14 Cal.4th 985, 993). Because Tedder and Kent were each independently liable for the full amount of the sanctions imposed, each independently could decide whether to pursue an appeal. More specifically, an attorney has a right, separate from that of the client, to appeal a sanctions order. (*Imuta v. Nakano* (1991) 233 Cal.App.3d 1570, 1585–1586.)

The issues raised by the appeal could have been resolved without Kent's participation, and joinder of Tedder and Kent would not have been necessary to afford Tedder complete appellate relief. Although Kent's participation in the appeal would have been necessary to relieve *Kent* of his independent obligation to pay the sanctions, it was unnecessary to relieve *Tedder* of his.

In *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 878, 880, a notice of appeal from a sanctions order against an attorney named the client only as the appellant. The California Supreme Court held that under the rule of liberal construction the notice of appeal should have been construed to include the omitted attorney because it was "clear from the record that the omitted attorney intended to participate in the appeal and the respondent was not misled or prejudiced by the omission." (*Id.* at p. 878.) The part of *K.J.* that is relevant here is this caveat on the holding: "That does not mean, however, that a client's notice of appeal from a sanctions order must always be construed to include an omitted attorney. There may be situations where an omitted attorney's intent to join in the notice of appeal is not

30

sufficiently clear from the record, or where the omission has otherwise caused prejudice to the respondent, rendering the attorney's inclusion in the appeal improper." (*Id.* at p. 889.) In other words, the notice of appeal might have omitted the attorney as an appellant because the attorney chose not to participate in the appeal.

There are several good reasons for not requiring attorney and client to join in an appeal of a joint and several sanctions award. When sanctions are imposed against both an attorney and the client, each might have different incentives to appeal, different levels of culpability, and different prospects for reversal. One party—the attorney or the client—might wish to avoid the cost of an appeal by paying the sanctions in full. Payment in full would discharge the nonappealing party of liability for paying the sanctions (*Watson v. McEwen* (1964) 225 Cal.App.2d 771, 775) yet the other party might wish nonetheless to pursue the appeal to cut off the nonappealing party's potential contribution rights (Civ. Code, §§ 1432, 875; see *Security Pacific Nat. Bank v. Lyons* (1994) 25 Cal.App.4th 706, 710).

In addition, an appeal is entirely permissive. (See § 902 ["[a]ny party aggrieved may appeal"].) A litigant cannot be forced to file an appeal. Requiring both client and attorney to appeal a joint and several sanctions order therefore would prevent an aggrieved party from pursuing an appeal if the other party refused to participate.

Kent was not required to have joined with Tedder in the appeal of the sanctions award. Kent voluntarily exercised his independent right to appeal. The trial court erred by concluding Kent could not be liable for appellate attorney's fees.

Because the trial court imposed the initial monetary sanctions of $10,475 against Tedder and Kent jointly and severally, the court expressly or

31

impliedly found that Kent had engaged in conduct subjecting him to sanctions. By appealing the order imposing sanctions, Kent, along with Tedder, forced Baer to incur additional attorney's fees and costs to uphold the sanctions and obtain full compensation for Tedder and Kent's misuse of the discovery process. The order awarding Baer appellate attorney's fees therefore will be modified to impose those fees against Tedder and Kent jointly and severally.

## IV.

### Sanctions for Frivolous Appeal

Baer contends that Tedder's appeal is frivolous because Tedder's sole argument was that "'monetary sanctions' are not 'attorneys' fees,'" and that argument "ignore[es] the plain wording of Code of Civil Procedure section 2023.030(a)." Baer does not move for sanctions but, as he did in the prior appeal, asks us on our own to order Kent to show cause why he should not be sanctioned for bringing a frivolous appeal. We decline to do so. Although Tedder's appeal is unsuccessful, it is not totally and completely without merit. (*Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 826.)

Tedder's and Kent's appellate briefs do include a sanctionable number of violations of rule 8.204(a)(1)(C), but we have dealt with those rule violations by declining to consider arguments and factual assertions that are not supported by citation to the appellate record.

## DISPOSITION

The order granting Baer's motion for attorney's fees is modified as follows: (1) the amount of fees awarded is reduced to $101,805 and (2) Tedder and Kent are to be jointly and severally liable for the full amount

of fees. As modified the order is affirmed. The matter is remanded to the trial court with directions to enter an order reflecting these modifications.

Baer is awarded costs on appeal.

SANCHEZ, ACTING P. J.

WE CONCUR:

SCOTT, J.

BANCROFT, PRO TEM, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.